CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 0 9 2005

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ROBERT ALLEN BANE, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:05-cv-00024 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| VIRGINIA DEPT. OF CORR., et al., | ) | By: Hon. James C. Turk |
|     Defendants. | ) | Senior United States District Judge |

Plaintiff Robert Allen Bane, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. §1983, with jurisdiction vested under 28 U.S.C. §1343. Bane sues the Virginia Department of Corrections (VDOC) and Greensville Correctional Center (GRCC), alleging claims under the Americans with Disabilities Act (ADA), 42 U.S.C. §12101, et. seq., and the Rehabilitation Act (RA), 29 U.S.C. §794. Specifically he alleges that after he requested specific accommodations for his physical disabilities, prison officials at Augusta Correctional Center (ACC) retaliated against him by getting him transferred to GRCC, an institution that could not provide any of the many accommodations his disabilities require. Later, officials transferred him back to Sussex II State Prison, where he also struggled for several weeks to have his disabilities accommodated. Bane seeks injunctive relief and nominal and punitive damages under the ADA and the RA.

With his complaint, Bane submitted the full $150.00 filing fee and evidence that he exhausted his administrative remedies as to his claims. The court filed the complaint conditionally, pending plaintiff's amendment of the complaint to state the facts on which his claims are based. Bane submitted a motion to amend which the court will grant. However, inasmuch as the court finds that his allegations as amended fail to state any claim upon which he is entitled to relief, his

1

action must be dismissed without prejudice, pursuant to §1915A(b)(1). Under this provision, the court may dismiss an action filed by a prisoner against government officials at any time as frivolous, malicious or for failure to state a claim upon which relief may be granted.

I.

Bane alleges the following facts and events related to his claims. Bane has been a VDOC prisoner for more than 18 years. He suffers from disabling physical and mental health conditions. He has limited use of his right arm and hand, stemming from nerve and ligament damage to his right shoulder, and must wear his right arm in a sling at all times. He also suffers from a condition known as "drop foot," as a result of nerve damage to his right leg, causing him to limp and drag his right foot when walking. He must wear a brace on his right ankle and use a crutch or cane. In addition to these mobility difficulties, Bane has severe nasal allergies that are aggravated by exposure to environmental tobacco smoke (ETS). Finally, Bane has been diagnosed with "schitzo-affective" disorder which causes him to cycle between manic and psychotic phases and is only partially controlled by medication. Because of these "disabilities," Bane asserts that doctors have discouraged him from attempting to negotiate stairs except on a limited basis and recommend that he be housed in a single-cell to avoid the danger that a cell mate might intimidate him.

After Bane received a reduction to Security Level 3 in December 2003, he requested a transfer to ACC, a Level 3 Security facility, because he has family living nearby. When he arrived at ACC on June 11, 2004, officials assigned him to the bottom bunk in a "handicap cell," equipped with a handrail beside the toilet and located on the ground floor. One of the pod showers also had a handrail. While at ACC, Bane requested that officials designate one table

near the dining room serving lines for physically disabled inmates. Bane himself is unable to use a crutch or cane while carrying a heavy meal tray. Officials denied his request. In late June and/or early July 2004, medical staff ordered that Bane be assigned to a non-smoking pod. Bane had also seen mental health staff and filed a written request, seeking assignment to a single cell. This request was never answered.

On his first day back at ACC, Bane had encountered Major Redman, an officer with whom Bane was acquainted.[1] After the two exchanged words, Redman told Bane that he would not be housed long at ACC. Without explanation, on June 30, 2004, officials transferred Bane to a standard cell with a cell mate who was a heavy smoker. Bane spoke with Redman, who took no action to correct the situation. Bane arranged to be moved to another cell with a non-smoker on July 3, 2004. Three days later, a doctor ordered that Bane be assigned to a handicap cell in a non-smoking pod and stated that he supported Bane's request for a designated table for disabled inmates in the diningroom. Officials informed Bane on July 15, 2004, that he would be transferred to another prison in order to accommodate his disabilities. Redman told Bane that he might be able to stay at ACC if he would drop his requests for accommodation. Bane told Redman that all the requested accommodations were readily available at ACC and said he would see Redman in court.

The next day, a Friday, Bane arrived at GRCC, where officials assigned him to a top bunk in an upstairs pod. When he complained, they reassigned him to a ground floor cell, top bunk.

---

[1] Bane alleges that, when he was housed at ACC in 1995, Redman brought three disciplinary charges against him for disobeying an order, lying to a staff member and faking an injury, all based on Bane's insistence that he could not lift his disabled right arm. After doctors verified Bane's medical condition, officials dismissed the charges. Bane filed a grievance against Redman, and as a result, the warden later reprimanded Redman for bringing the charges.

3

Bane slept on the floor. On Monday, after the assistant warden received telephone calls from Bane's family and the ACLU, officers moved Bane to a single cell on the ground floor. No regular cells at GRCC have handrails by the toilets. As a result, Bane fell and injured himself on July 20, 2004. While examining the injuries, which were not serious, the doctor noted the extent of Bane's disabilities and ordered that he be placed in an infirmary cell, equipped with handrails, until he could be transferred. Because of his assignment to the infirmary, Bane could not access various privileges available to general population inmates, including ordering food from the commissary; eating in the dining halls; accessing the outside recreation fields, indoor gymnasium, and visiting room; participating in prison jobs, treatment/education programs, or religious services; possessing his own television or clothing; and using microwave ovens available in the pods.

On August 10, 2004, officials transferred Bane to Sussex II State Prison (SIISP), a Level 4 Security prison. Officials initially assigned Bane to the top bunk in a top floor cell, then to a bottom bunk on a ground-floor cell with a heavy smoker as his cellmate. On October 29, 2004, after Bane filed many complaints, a non-smoker cell mate moved in with Bane, and a week later, both inmates moved to a standard cell in a non-smoking pod. Bane fell again as a result of having no handrail beside the toilet. The next day he and his cell mate moved to a handicap cell. In January 2005 Bane again received two consecutive cell mates who smoked (even though his cell is designated as non-smoking), but after a few days, each of these inmates moved out. Currently, Bane has no cell mate. He does not have single-cell status, however, and has been told that the only available single cells at SIISP are in segregation, where he would not have access to general population privileges.

Bane alleges that the VDOC receives federal funds and that VDOC prison officials (and federal Social Security officials) regard him as physically and mentally disabled as defined in the RA. Bane asserts that since he is a Level 3 inmate, he should be transferred back to ACC, a Level 3 facility where all accommodations for his disabilities are available without limitation to his access to general population privileges.

II.

As an initial matter, as to the ADA and RA claims, Bane's sole recourse is under the ADA and RA themselves and not under §1983, as both statutes include provisions allowing private causes of action. See, e.g., Grey v. Wilburn, 270 F.3d 607, 610-11 (8th Cir.2001). The court will dismiss Bane's §1983 claims accordingly.

Second, the court holds that Bane may not proceed with his claims for monetary damages under Title II of the ADA. The Supreme Court has ruled that Title II of the ADA, prohibiting "public entity" from discriminating against a "qualified individual with a disability" on account of that individual's disability, applies to state prisons. Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206 (1998). This court and the United States Court of Appeals for the Fourth Circuit, however, have held that Title II of the ADA did not validly abrogate the state's Eleventh Amendment immunity against suits for money damages. See Wessel v. Glendening, 306 F.3d 203 (4th Cir. 2002); Bane v. Virginia Dept. of Corr. (Bane I), 110 F. Supp.2d 469 (W.D. Va. 2000). Recently, the United States Supreme Court found that Title II does abrogate states' Eleventh Amendment immunity as to claims that public entities deny disabled individuals equal access to courts. See Tennessee v. Lane, 541 U.S. 549 (May 17, 2004). In Lane, the Court analyzed Title II as applied to the fundamental right of access to courts, noting that the right of

judicial access is among the "basic constitutional guarantees, infringements of which are subject to more searching judicial review," and is "protected by the Due Process Clause of the Fourteenth Amendment." Id. at 522-23. Upon finding that Title II's abrogation of the states' immunity was valid as applied to "the class of cases implicating the accessibility of judicial services," the Court concluded, "[W]e need go no further." Id. at 531. Therefore, this court is of the opinion that the state's Eleventh Amendment immunity against claims for money damages under Title II of the ADA is intact as to cases, like Bane's, that do not implicate fundamental constitutional rights or affect individuals of a suspect class. See Cochran v. Pinchak, 401 F.3d 184, 192-93 (3d Cir. 2004) (finding after Lane that Title II as applied to inmate claims for damages under the Equal Protection Clause of the Fourteenth Amendment did not abrogate state's Eleventh Amendment immunity); Miller v. King, 384 F.3d 1248 (11th Cir. 2004) (finding after Lane that Title II as applied to inmate claims for damages under the Eighth Amendment did not abrogate state's Eleventh Amendment immunity); see also McNulty v. Board of Educ. of Calvert County, 2004 WL 1554401 (W.D. Md. 2004) (unpublished) (finding that state's Eleventh Amendment immunity against claims for money damages under Title II of ADA as upheld in Wessel is intact after Lane).[2] Under this precedent, the court will dismiss Bane's claims for monetary damages for past incidents of discrimination or retaliation in violation of the ADA. The court will consider, however, whether Bane may have claims under the ADA for prospective injunctive relief.

---

[2]But cf. Phiffer v. Columbia River Correctional Institute, 384 F.3d 791, 791 (9th Cir. 2004) (confirming prior circuit precedent holding that Title II of the ADA did abrogate Eleventh Amendment immunity).

III.

The court will consider Bane's separate claims of discrimination and retaliation under the RA. Since Yeskey, courts have applied the mandates of the RA to state prisons that accept federal funds. See, e.g.,McIntyre v. Robinson, 126 F. Supp. 2d 394, 407-08 (D. Md. 2000); Scott v. Kelly, 107 F. Supp. 2d 706, 710 (E.D. Va. 2000). Section 504 of the RA, 29 U.S.C. §794(a), forbids discrimination against the disabled in programs receiving federal funds: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Courts have interpreted the language of §794 broadly, recognizing that Congress passed the RA with the purpose of eliminating discrimination against the handicapped in programs and activities receiving federal funds. See, e.g., Alexander v. Choate, 469 U.S. 287 (1985). As part of this broad interpretation, the Supreme Court has held §504 of the Act to require "reasonable accommodations" in a particular program or activity receiving federal financial assistance in order to ensure "meaningful access" to the program. Id. at 301. A plaintiff asserting a claim for denial of a benefit under the RA must prove that he (1) is a qualified individual with a disability,[3]

---

[3]For purposes of this opinion only, the court assumes without finding that Bane could prove that his medical conditions constitute disabilities under the ADA and the RA. The ADA defines the term "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §12102(2) (2000). The RA uses a comparable definition. 29 U.S.C.§705(9)(B) (2000). "A plaintiff's impairment qualifies as one that "substantially limits" a major life activity if the plaintiff is "[s]ignificantly restricted as to the condition, manner or duration . . . under which the average person in the general population can perform that same major life activity." 29 C.F.R. §1630.2(j)(1)(i), (ii) (2004). See Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 196 (2002) (finding that impairments which "interfere in only a minor way" with plaintiff's performance of major life activities do not qualify as disabilities"); Bragdon v. Abbott,

7

(2) is otherwise qualified for the benefit of programs, services or activities in question, and (3) was excluded from the same due to discrimination on account of that disability. McIntyre, 126 F. Supp. 2d at 408, citing Doe v. Univ. of Maryland Med. Sys. Corp., 50 F.3d 1261, 1265 (4th Cir.1995) (noting that because language and purposes of the Acts are substantially the same, a common analysis applies to claims under ADA and RA).

Prison officials need not anticipate an inmate's unarticulated need for accommodation or to offer accommodation sua sponte; the inmate must provide evidence of his disability and the severity of the mental or physical limitations resulting from it and he must request accommodation. See Lue v. Moore, 43 F.3d 1203, 1206 (8th Cir. 1994) (no violation of RA where blind inmate did not apply for program or request accommodation); Seaman v. CSPH, Inc., 179 F.3d 297, 300 (5th Cir. 1999) (employee's ADA claim failed because he did not prove employers knew limitations resulting from his disability or that he requested specific accommodation that was denied). Prison officials may reasonably require the inmate to obtain medical confirmation of the alleged need for accommodation. Shedlock v. Department of Corrections, 818 N.E.2d 1022, 1035 (Mass. 2004). Moreover, determination of whether an inmate is "qualified" to participate in the service, program or activity must factor in any valid penological justifications for excluding that individual. Miller, 384 F.3d at 1266. Similarly, prison officials may determine the reasonableness of the accommodation request in consideration

---

524 U.S. 624, 641 (1998) (ADA "addresses substantial limitations on major life activities, not utter inabilities"). Evidence that an inmate suffers from specific medical conditions is not sufficient to establish that the inmate is a qualified individual with a disability within the meaning of either Act nor does it establish that the inmate's condition meets the required level of severity. McIntyre, 126 F.2d at 408. Bane's allegations and the grievance responses do indicate, however, that the VDOC and the Social Security Administration consider Bane disabled in some respect. Thus, for purposes of the current case, the court assumes without finding that he is disabled as alleged.

8

of other penological needs in the prison setting, such as security, safety and administrative exigencies.[4] Id. Furthermore, prison officials may meet their accommodation responsibilities under the RA by transferring the inmate to another prison facility that is already equipped to offer him meaningful access to the requested benefits.[5] Id. at 1267.

Federal regulations prohibit retaliation against any person for the exercise of rights pursuant to the Rehabilitation Act. Hoyt v. St. Mary's Rehabilitation Center, 711 F.2d 864, 867 (8th Cir. 1983) (recognizing cause of action for retaliation under §504 of the RA). 29 U.S.C.§ 794a(a)(2); 45 C.F.R. §§ 84.61, 80.7(e).[6] To state a prima facie case of retaliation in violation of the RA, plaintiff must demonstrate (1) that he engaged in activity protected under the Act, (2) that he suffered an adverse governmental action after or at the same time as such protected activity, and (3) that the exercise of the protected activity was the cause of the adverse governmental action. Bennett v. Henderson, 15 F. Supp. 2d 1097, 1112 (D. Kansas 1998).

IV.

Under these principles, the court concludes that Bane's allegations fail to state any claim

---

[4]See also Gates v. Rowland, 39 F.3d 1439, 1446-1447 (9th Cir.1994) (applying Turner v. Safely, 482 U.S. 78 (1987) rational relationship test in determining reasonableness of accommodations requested under ADA for HIV-positive prisoners in light of other penological concerns).

[5]The court in Miller noted that the ADA does not create any "right of transfer to a particular prison." 384 F.3d at 1267 n. 21; Olim v. Wakinekona, 461 U.S. 238, 245 (1983) (prisoners have no constitutional right to be incarcerated in any particular prison within a state).

[6]This section provides:
Intimidatory or retaliatory acts prohibited. No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part.

for money damages actionable under the RA. He fails to allege facts indicating that anyone at ACC discriminated against him in June and July 2004 on the basis of his disabilities. Even assuming without finding that some or all of his medical conditions qualify as disabilities under the RA, Bane does not allege that he was excluded from meaningful participation in any program or activity at ACC because of these conditions. On the contrary, for the most part, he admits that ACC officials accommodated his medical needs---by assigning him a bottom bunk in a cell on the ground floor, equipped with handrails. During the few weeks he was at ACC, he requested certain additional accommodations (a non-smoking pod, a single cell, a table near the serving line in the dining room) and sought medical approval for these. Defendants cannot be held liable under the RA for failing to anticipate Bane's desired accommodations and reasonably could have denied his requests until receiving medical recommendations. Furthermore, Bane does not allege any facts indicating that because of his disabilities, ACC officials transferred him on June 30, 2004, to a cell having no handrails and a cellmate who smoked. Indeed, Bane's complaints about this situation resulted in accommodation within days (assignment to a cell with a non-smoking cell mate).

Moreover, in the course of four months (July to October 2004), prison officials provided accommodations for all of the needs Bane identified at ACC. At Sussex II, he is assigned to a bottom bunk in a non-smoking cell on the ground floor without a cell mate, with handrails to assist him in using the toilet and the shower. Bane would prefer to have had his needs accommodated more promptly, to have remained at ACC, and to have a cell designated as a single cell. However, he has no entitlement under the RA or the ADA to determine precisely the manner in which prison officials choose to accommodate his disabilities or the prison in which

10

they choose to provide those accommodations.

Furthermore, the court cannot find that the four-month sequence of events by which officials accomplished accommodation of Bane's disabilities was so unreasonable as to violate the RA. When officials assigned Bane to cells with insufficient accommodations--at GRCC, and at SIISP--they reassigned him within days to cells that better met his needs. Temporary assignment to the infirmary at GRCC was clearly an accommodation of Bane's asserted disabilities. Thus, his exclusion from certain privileges during his brief, three-week stay in the infirmary occurred as a natural result of this accommodation and not as a result of discrimination based on his disability. Once Bane arrived back at SIISP, he spent two and a half months celled with a smoker. Bane fails to allege facts, however, demonstrating that this cell assignment delay resulted from anything more sinister than prison procedures and waiting lists for the more desirable, non-smoking cells. Such a brief delay, per procedure, certainly is not discriminatory and in Bane's case, was not an unreasonable delay of accommodation of his medical needs. Indeed, Bane does not allege suffering any severe medical problems as a result of his short stays with smoker cell mates.[7] Based on the foregoing, the court concludes that all of Bane's claims for monetary relief under the RA and his claims for injunctive relief under the RA and/or the ADA,[8] regarding discrimination on account of, or inadequate accommodation of, his medical

---

[7]Because Bane does not allege suffering any significant physical harm as a result of the delays in accommodation of his medical needs and disabilities, his claims for monetary relief are also likely barred under 42 U.S.C. §1997e(e) (barring inmates from recovering monetary damages for emotional distress absent evidence of physical injury).

[8]Bane apparently fears that at any time, SIISP officials could assign a smoker to cell with him, thus leaving him without accommodation of his problems with second-hand smoke or his mental health need to be in a single cell. As Bane is now located within the jurisdiction of the United States District Court for the Eastern District of Virginia, he may pursue an action for

11

disabilities must be dismissed, pursuant to §1915A(b)(1), for failure to state a claim.

V.

Bane's retaliation claims also fail. Bane is convinced that his old nemesis, Officer Redman, retaliated against Bane for requesting accommodations under the ADA and the RA by getting Bane transferred away from ACC, the institution Bane had specifically requested. In support for his retaliation claim, Bane points to Redman's statements before his transfer to GRCC, the fact that GRCC could not accommodate any of his disabilities (except in the infirmary), and the fact that all of Bane's requested accommodations could have been accomplished at ACC. Bane argues that these facts prove that Redman transferred him in retaliation for his exercise of his right to request accommodation.[9]

First, as stated, all of Bane's claims for monetary relief under the ADA, including his retaliation claim, must be dismissed, because the statute did not validly abrogate the state's Eleventh Amendment immunity as to such claims by prisoners. Second, the court has already found that Bane's requests for accommodations at ACC did not state claims under the RA because he does not allege being excluded from meaningful participation in any activity or program there, even absent the requested accommodations. As such, Bane's complaints at ACC did not represent an exercise of his rights under the RA, as required to state a retaliation claim

---

injunctive relief in that court, should the need arise. He is advised, however, that in order to qualify for injunctive relief under either the ADA or the RA, he must give officials proper notice of his medical conditions, the severity of the limitations they place on his major life activities, and the accommodation(s) he believes would allow him to participate meaningfully in prison benefits and programs.

[9]Although Bane blames Redman for his transfer away from ACC, he has sued the VDOC and GRCC, both proper defendants under the ADA and the RA.

12

under that statute. See Hoyt 711 F.2d at 867 (finding no retaliation claim because plaintiff's complaints could not reasonably be viewed as protected activity under §504). Moreover, Bane admits, and the record indicates, that the transfers ultimately did place him in an institution where his needs were adequately accommodated. Thus, he cannot demonstrate that the transfer away from ACC represented an adverse governmental action. In his eyes, taking him away from ACC was undesirable, but his preference for ACC cannot factor into the court's assessment of prison officials' responsibilities under the RA itself. The court will dismiss Bane's retaliation claims for damages, pursuant to §1915A(b)(1), for failure to state a claim. An appropriate order shall be issued this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 9th day of June, 2005.

/s/ James C. Turk
Senior United States District Judge